UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case Number 04-20038-BC
        Honorable Thomas L. Ludington

DONALD NORTON YORK, a/k/a Donald York,
DAVID WARREN TICE, JR., a/k/a David Tice,
JAMES LAUGHTON,

        Defendants.
_____/

**ORDER DENYING DEFENDANT TICE'S MOTIONS, CONCURRED
IN BY DEFENDANTS YORK AND LAUGHTON, FOR LIMITING
THE TESTIMONY OF MCWHORTER, FOR SEVERING DEFENDANTS,
FOR SEVERING COUNTS, FOR LIMITING DEFENDANT TICE'S
CROSS-EXAMINATION, AND FOR ADDITIONAL PEREMPTORY CHALLENGES;
GRANTING IN PART AND DENYING IN PART DEFENDANT TICE'S MOTION
*IN LIMINE*, CONCURRED IN BY DEFENDANTS YORK AND LAUGHTON,
TO PROHIBIT USING THE TERM "MOTORCYCLE GANG;"
GRANTING DEFENDANT TICE'S AND DEFENDANT YORK'S MOTIONS
TO EXTEND MOTION CUTOFF;
DENYING DEFENDANT TICE'S MOTION, CONCURRED IN BY DEFENDANT
LAUGHTON, TO TRANSFER THE TRIAL;
GRANTING DEFENDANT YORK'S MOTION TO ADJOURN THE TRIAL;
SETTING THE FINAL PRETRIAL CONFERENCE AND PLEA CUTOFF;
SETTING DEADLINE FOR FILINGS FOR TRIAL;
AND DETERMINING EXCLUDABLE DELAY**

On February 8, 2006, the government filed a sixth superseding indictment against Defendants Donald York, David Tice, and James Laughton. The indictment includes 27 counts, charging a variety of offenses, including a conspiracy from a time unknown until July 29, 2004, drug and firearms offenses occurring in 2004, and offenses involving a murder on March 4, 2002.

I.

According to the government, beginning around 1995, several individuals began to obtain

methamphetamine from Sergio Coria in California. Methamphetamine was distributed to Defendant Tice, who distributed it to others, including members of the Fly-In-Wheels motorcycle club. The government also alleges that Defendants York and Laughton were members of the Fly-In-Wheels motorcycle club and distributed methamphetamine received from Defendant Tice and Coria. Defendant Laughton was incarcerated until sometime in 2000 and again in 2002.

In late 2001, Brian Langdon, a member of the Fly-In-Wheels motorcycle club, provided information to law enforcement authorities, a fact that became publicly known only in early 2002. The government alleges that, on March 4, 2002, Langdon was shot and killed in retaliation for providing that information.

Later in 2002, according to the government, Defendant York told David McWhorter, a friend and co-participant in drug and gun activities, that Defendants York, Tice, and Laughton carried out Langdon's killing. McWhorter was facing criminal charges in the fall of 2003 and became a government informant (around October 2003, according to Defendant Tice). McWhorter also made controlled purchases of methamphetamine from Defendants York and Tice in 2004.

While not contained in the briefing to date, the Court learned at the hearing that McWhorter testified before a grand jury in Gennessee County about a rival Flint motorcycle club. A transcript of that testimony was made public and, although redacted, the transcript did identify Defendant York.

The government also alleges that Defendant Tice told Chris Perry, another person who received methamphetamine from Coria, that Defendants Tice and Laughton took care of Langdon because he was snitching. The government alleges that, after their arrest in 2004, Defendants York and Tice made admissions to a cellmate that they were involved in Langdon's murder. The

government contends that the murder of Langdon was an act in furtherance of the continuing drug trafficking conspiracy, as a way of silencing potential witnesses who knew of the conspiracy.

II.

Defendant Tice filed several motions, in which Defendants York and Laughton concurred.[1] Defendant Tice requested limitations on McWhorter's testimony, limitations on cross-examination of Defendant Tice, severance of the defendants, and severance of the drug counts from the murder counts, arguing in these motions the recurring issue of the admissibility of hearsay statements in light of the Confrontation Clause of the Sixth Amendment. For example, in his motion to limit the testimony of McWhorter, Defendant Tice argues that a violation of the Confrontation Clause will occur, if Defendant York's alleged statement inculpating these three defendants comes into evidence through McWhorter's testimony and if Defendant York renders himself unavailable for cross-examination by asserting his Fifth Amendment right not to testify.

A.

In *Bruton v. United States*, 391 U.S. 123 (1967), the Supreme Court held that admitting the confession of a non-testifying co-defendant violated the right to confrontation of another defendant. There, the co-defendant orally confessed that he and the defendant committed a robbery, and the trial court admitted the confession with a limiting instruction, although the co-defendant did not testify. While juries are presumed to follow instructions, the Court expressed grave concerns about "the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant." *Id*. at 136. The co-defendant was never subject to cross-examination, so

---

[1] As reflected on the Court's docket and as represented at argument, Defendants York and Laughton have joined in and concurred in these four motions filed by Defendant Tice. *Compare* [dkt ##337, 342, 387; 338, 343, 387; 339, 346, 341, 387; 348, 387].

placing his confession before a jury, when the confession inculpated the other defendant, violated the Sixth Amendment. *See id.*

The Supreme Court in *Bruton* addressed confessions, but the Sixth Circuit subsequently concluded that the rule in *Bruton* did not extend to bar the use of co-conspirators' statements against each other. *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980) (citation omitted) ("Statements made by a co-conspirator during and in furtherance of the conspiracy do not have the same unreliability as confessions."); *see also United States v. Hamilton*, 689 F.2d 1262, 1271 n.5 (6th Cir. 1982) ("*Bruton* does not prohibit the use as evidence of coconspirators' statements against other coconspirators.") (citations and internal quotations omitted).

Subsequently, in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court introduced a distinction between testimonial and non-testimonial statements. In *Crawford*, a wife did not testify against her husband due to marital privilege, but the trial court admitted her statement made during a police interrogation, because the statement bore adequate indicia of reliability through particularized guarantees of trustworthiness under *Ohio v. Roberts*, 448 U.S. 56 (1980). The Supreme Court reversed, because the Confrontation Clause requires cross-examination for testimonial statements, such as ex parte testimony at a preliminary hearing or responses to police interrogation. *See id.* at 52. Specifically, the Court held, "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59 (footnote omitted). Although the Court stated that the primary object of the Sixth Amendment is testimonial hearsay, *see id.* at 53, the Court did not define "non-testimonial statements" or specify what, if any, effect its decision had on Confrontation Clause challenges to non-testimonial statements. The Court noted, however, that

long-standing and, thus, permissible exceptions to the general rule of exclusion of hearsay included such non-testimonial statements as statements in furtherance of a conspiracy. *Id*. at 56.

Here, relying on the general outline provided in *Crawford* and the Sixth Circuit's definition of testimonial statements as those that "a reasonable person in the declarant's position would anticipate . . . being used against the accused in investigating and prosecuting the crime," *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004), Defendant York's alleged statement to McWhorter appears to be non-testimonial. According to the government, McWhorter and Defendant York were friends, and McWhorter had long participated with the defendants in drug transactions, which sometimes involved firearms. In the absence of any contrary suggestion, the Court has no reason to conclude that Defendant York, in allegedly making that statement to a friend and co-conspirator, would have anticipated its use in a criminal investigation or prosecution. Accordingly, the alleged statement falls outside the constraints of *Crawford*.

Despite the Court's abrogation of *Roberts* in *Crawford*, *Roberts* continues to govern the Confrontation Clause analysis of non-testimonial statements. *See United States v. Mooneyham*, 473 F.3d 280, 287 (6th Cir. 2007); *United States v. Martinez*, 430 F.3d 317, 329 (6th Cir. 2005). Under *Roberts*, an out-of-court statement is admissible if it falls within a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness. *United States v. Franklin*, 415 F.3d 537, 546 (6th Cir. 2005) (citing *Crawford*, 541 U.S. at 60; *Roberts*, 448 U.S. 56). In *Franklin*, although the court reiterated that statements against penal interest are not a firmly established hearsay exception, the court permitted the admission of the inculpatory statement of a non-testifying co-defendant. *Id*. at 547. The facts there revealed particularized guarantees of trustworthiness: a close friendship between the co-defendant/declarant and the witness and the absence of exaggeration in the

inculpatory statement. *Id*. at 548.  More importantly, "[c]o-conspirator statements in furtherance of a conspiracy are both inherently trustworthy and 'firmly rooted.'" *Mooneyham*, 473 F.3d at 287 (citing Federal Rule of Evidence 801(d)(2)(E)); *see also Crawford*, 351 U.S. at 56 (describing, in dicta, the contrast between prior testimony and exceptions to the general bar to hearsay for such non-testimonial statements as statements made in furtherance of a conspiracy).

Here, the limited factual allegations do suggest that Defendant York's purported statement to McWhorter was made in furtherance of a conspiracy to distribute methamphetamine. The admission to McWhorter, then a co-conspirator, that these three defendants killed a person whose communication with the government threatened the conspiracy was a statement in furtherance of their conspiracy. Such a statement would have the effect of relating to McWhorter the ongoing activities of those involved in the conspiracy, the consequence for those who informed on the conspiracy, and promoting the continued existence of the conspiracy. In addition, the facts available here suggest a similarity to *Franklin*, in which a conspirator's statement to a co-conspirator bore particularized guarantees of trustworthiness by virtue of their long-standing relationship.

Consequently, under the *Roberts* standard applied to non-testimonial statements, testimony from McWhorter regarding Defendant York's alleged statement does not violate the confrontation rights of his co-defendants. The statement falls within the well-settled hearsay exception for co-conspirator statements and also bears particularized guarantees of trustworthiness as a statement to a friend. Accordingly, admitting McWhorter's testimony regarding Defendant York's inculpatory statement does not violate the Confrontation Clause in light of *Crawford* or *Bruton*.

Because the foregoing analysis rests on the assumption that Defendant York's statement was made in furtherance of a conspiracy, the admission of that statement remains subject to the

government sustaining its burden under Federal Rule of Evidence 801(d)(2)(E). The government must "show by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of the conspiracy, and (3) that the hearsay statement was made in the course and in furtherance of the conspiracy."[2] *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979) (citing *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978)). In the event that the government has not met this burden prior to the close of its case-in-chief, the Court will be required to declare a mistrial, unless a cautionary jury instruction would shield the other defendants from prejudice. *See id*. at 154.

Under *Vinson*, 606 F.2d at 154, the Court may exercise its discretion regarding the means of determining admissibility under Federal Rule of Evidence 801(d)(2)(E). The court may hold a mini-hearing without the jury, require the government to produce non-hearsay evidence before making a finding regarding the admissibility of hearsay statements by co-conspirators, or conditionally admit the statements, subject to a later demonstration of their admissibility. *Id*. Here, a mini-hearing or an *in camera* review are not warranted because additional consideration of the evidence would not clarify the relevant factual allegations. Specifically, the single statement attributed to Defendant York by McWhorter is identified, and the relationship between the declarant

---

[2]Regarding the existence of a conspiracy, the government must show that two or more people agreed to engage in a common scheme or plan to achieve a criminal purpose. *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973). Once a person has a joined a conspiracy, that person is liable for all the acts of the conspiracy until the person withdraws from a conspiracy. *United States v. Adamo*, 742 F.2d 927, 943-944 (6th Cir. 1984). By extension, evidence admissible against one member of a conspiracy is admissible against other members of the conspiracy. *Id*. at 943. To withdraw from a conspiracy, a person must take an affirmative action to defeat or disavow the purpose of the conspiracy. *United States v. Lash*, 937 F.2d 1077, 1084 (6th Cir. 1991). Consequently, contrary to the argument advanced by Defendant Laughton, absent a showing of withdrawal from the conspiracy, statements made during a period of a co-conspirator's incarceration are admissible against that co-conspirator.

and the anticipated witness is explained. Given the evidence of this statement and the nature of the alleged conspiracy, the Court is not persuaded of the benefit of an additional hearing, particularly when the government has acknowledged that a failure to meet its burden to make a showing under Federal Rule of Evidence 801(d)(2)(E) could result in a mistrial.

B.

Defendant Tice also filed a motion to sever the defendants, seeking relief under Federal Rule of Criminal Procedure 14(a), from a joint trial under Federal Rule of Criminal Procedure 8(b), because he contends that he will be prejudiced. Specifically, Defendant Tice argues that his constitutional right to confrontation will be violated by the possible admission of inculpatory statements allegedly made by Defendant York. Yet, as discussed above, the Sixth Amendment, as interpreted in *Crawford* and *Bruton*, does not require a bar on McWhorter's testimony. Moreover, the alleged statement of Defendant York, inculpating all three of these defendants, affects each of them equally; severance would not protect Defendant Tice from any ill consequence of admitting that testimony from McWhorter.

Defendant Tice's remaining arguments for the severance of the defendants – that Defendant York might provide exculpatory testimony for Defendant Tice at a separate trial or that a charge of conspiracy places a co-defendant in an "uneasy seat" – do not suffice to establish prejudice. The federal criminal justice system has a preference for joint trials for defendants indicted together, and a motion for severance is in the trial court's sound discretion. *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999) (citations omitted). "A defendant seeking severance at trial from co-defendants bears a strong burden and must demonstrate substantial, undue, or compelling prejudice, . . . [and] severance is required only if there is a serious risk that a joint trial would compromise a specific trial

right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. (citations and internal quotations omitted). *See also United States v. Beverly*, 369 F.3d 516, 534 (6th Cir. 2004) (requiring a showing of "substantial prejudice" to grant severance, rather than because the likelihood of acquittal increases with severance or because evidence against a co-defendant is far more damaging); *United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004) (not granting severance where the defendant did not make a "convincing" showing of important testimony about one count and a "strong need" to refrain from testifying on another count). Defendant Tice's generalized arguments, without reference to any other constitutional right, do not rise to the showing of prejudice that would require severance from his co-defendants.

C.

Similarly, Defendant Tice's motion for severance of the drug trafficking counts (counts 1-11) from the murder counts (counts 21-23, 25) also fails. As described above, the federal criminal justice system has a preference for joint trials for defendants included in the same indictment, and a defendant bears a heavy burden to demonstrate the need for severance. In this motion, Defendant Tice again argues the *Bruton/Crawford* issue, which the foregoing discussion has demonstrated presents no constitutional bar here. Defendant Tice also argues that two years intervene between the charges involving a 2002 murder and the drug and firearms charges from activities in 2004. Yet, as the government points out, the charge of a conspiracy to distribute methamphetamine dates from a time unknown through July 29, 2004. Allegedly, the 2002 murder was committed in furtherance of the drug trafficking conspiracy, to serve as a threat to others who might consider informing on the conspiracy. Federal Rule of Criminal Procedure 8(a) permits joinder of charges if the offenses "are based on the same act or transaction, or are connected with or constitute parts of a common

scheme or plan." On the facts alleged, the joinder appears proper, and Defendant Tice has not identified any prejudice sufficient to justify the severance of the drug trafficking counts from the murder counts.

D.

Additionally, Defendant Tice filed a motion to limit his cross-examination to only the murder charges and to prohibit inquiry into the drug charges. He argued, relying on the Court's authority to set the scope of cross-examination under Federal Rule of Evidence 611(b), that without some limitation on the scope of cross-examination, he would be confronted with a difficult choice. He could either defend himself against the murder charges, while simultaneously opening himself to examination on drug charges, or not defend himself from as to any charge. Yet, apart from referring to the Court's discretion and the interests of justice, Defendant Tice has offered no legal authority that requires limiting the scope of cross-examination based on the difficulty and complexity of defending against a particular set of charges. Although possibly preferrable as a trial strategy, Defendant Tice has shown no justification for placing a limitation on the scope of his cross-examination, should he elect to testify.

III.

Beyond the motions for limitations on testimony and for severance, Defendant Tice and his co-defendants filed several additional motions. Defendant Tice filed a motion for additional peremptory challenges under Federal Rule of Criminal Procedure 24(b), in which his co-defendants joined.[3] He offers no particular justification to granting that request at this juncture. Accordingly, his request is denied without prejudice to renewing the motion during voir dire, if a justification for

---

[3][Dkt ##336, 344, 387].

additional peremptory challenges then becomes apparent.

Defendant Tice, again joined by his co-defendants, filed a motion *in limine* to prohibit the use of the term "motorcycle gang."[4] He challenges the use of that term as prejudicial. The government alleges that the interconnection between these three defendants, and others, did involve their participation in the Fly-in-Wheels club. "Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue." *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (citation and internal quotations omitted). The government states that it can show any interrelationship among defendants and others without using the term "gang" and will so instruct its witnesses. Accordingly, any prejudice from the use of that term will be ameliorated, while still permitting the government to address relationships involving the Fly-in-Wheels club.

Defendants York and Laughton both filed motions to extend the time for filing pretrial motions.[5] The Court is persuaded that the complexity of the case and the prior indeterminacy regarding whether the possibility of the death penalty justifies extending the motion cutoff date.

Defendant York filed a motion to transfer the case to Flint, Michigan, in which Defendant Laughton joined.[6] Yet Federal Rule of Criminal Procedure 21(b) permits the transfer of a case to another district, not to another division within the same district. Also, Defendant York has not offered any justification for requiring the expenditure of additional judicial resources in educating a different judge on the intricacies of the case. Accordingly, the case will not be transferred to Flint.

---

[4][Dkt ##340, 347, 345, 387].

[5][Dkt ##349, 351].

[6][Dkt ##350, 388].

Defendant York filed a motion to adjourn the trial.[7] Also, on or around April 19, 2007, the government provided Defendants with additional and extensive discovery, which included lengthy phone records. Consequently, the period between April 19, 2007 and the adjudication of the anticipated motions based on this additional discovery shall be deemed excludable for the purpose of computing time limits under 18 U.S.C. § 3161(h)(8)(A), because the Court determines that additional time is necessary for Defendants to adequately address the issues that will arise from the additional discovery recently provided to them. The ends of justice, therefore, are served by this delay and outweigh the best interests of the public and Defendants in a speedy trial.

IV.

Accordingly, it is **ORDERED** that Defendant Tice's motion to limit McWhorter's testimony [dkt #337] is **DENIED**.

It is further **ORDERED** that Defendant Tice's motion to sever Defendants [dkt #348] is **DENIED**.

It is further **ORDERED** that Defendant Tice's renewed motion to sever counts [dkt #338] is **DENIED**.

It is further **ORDERED** that Defendant Tice's motion to limit the scope of the cross-examination of Defendant Tice [dkt #339, 346] is **DENIED**.

It is further **ORDERED** that Defendant Tice's motion for additional peremptory charges [dkt #336] is **DENIED**.

It is further **ORDERED** that Defendant Tice's motion *in limine* to prohibit the use of the term "motorcycle gang" [dkt ##340, 347] is **GRANTED IN PART** and **DENIED IN PART**.

---

[7][Dkt #372].

It is further **ORDERED** that Defendant Tice's and Defendant York's motions to extend the date for the motion cutoff [dkt ## 349, 351] are **GRANTED**. The motions cutoff date is extended to **May 11, 2007**.

It is further **ORDERED** that Defendant York's motion to transfer the trial [dkt #350] is **DENIED**.

It is further **ORDERED** that Defendant York's motion to adjourn the trial [dkt #372] is **GRANTED**. The trial shall commence at 8:30 a.m. on **July 17, 2007**.

It is further **ORDERED** that the final pretrial conference and plea cutoff are set for **June 11, 2007** at 2:30 p.m.

It is further **ORDERED** that witness lists, exhibit lists, proposed jury instructions, and proposed *voir dire* questions shall be filed on or before **July 2, 2007**. Exhibit lists will not be accepted if they are not in the grid format approved by the Court.

It is further **ORDERED** that the time period between **April 19, 2007** and the adjudication of the anticipated motions shall be excluded for the purposes of computation of the time limits under 18 U.S.C. § 3161(h)(8)(A).

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: May 7, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 7, 2007.

                            s/Tracy A. Jacobs
                            TRACY A. JACOBS